José Pérez Barros, como Administrador Judicial de los bienes de la Sucesión de Jacinto Pérez Barros, demandante y apelante, *v.* El Pueblo de Puerto Rico, demandado y apelado.

No. 4187.—*Visto:* Noviembre 16, 1927. *Resuelto:* Julio 19, 1928.

*Alemañy & Ramírez,* abogados del apelante; *Attorney General, George C. Butte* y *José E. Figueras, Fiscal del Supremo,* abogados del apelado.

El Juez Asociado Señor Hutchison, emitió la opinión del tribunal.

El artículo 329 en parte, y el 330 del Código Penal leen así:

"Artículo 329. Todo lo que fuere perjudicial a la salud, indecoroso u ofensivo a los sentidos, o que obstruyere el libre goce de alguna propiedad de modo que estorbare el bienestar de toda una sociedad o vecindario, o un gran número de personas . . . . constituye un estorbo público." (Leyes de 1912, página 103).

"Artículo 330. Toda persona que mantuviere un estorbo pú-

blico, o cometiere algún acto constitutivo de lo mismo y para lo cual no se hubiere prescrito determinada pena, o que voluntariamente dejare de cumplir algún deber legal, relacionado con la remoción de un estorbo o daño público (nuisance), será reo de *'misdemeanor.'* ''

Los artículos 31 y 32 de la ''Ley para reorganizar el servicio de Sanidad,'' (Leyes de 1912, página 126) leen en parte como sigue:

''Artículo 31.—En caso de que el dueño, agente o inquilino de una propiedad donde existe un daño o estorbo público, dejare de hacerlo desaparecer o abatir dentro de un plazo razonable después que se haya hecho debidamente la notificación para la ejecución de la obra, se faculta por la presente a las autoridades sanitarias para remover o abatir el daño o estorbo a expensas de dicho dueño, agente o inquilino, y la parte interesada será informada debidamente de los gastos en que se hubiere incurrido con tal motivo, y reintegrará el importe de los mismos a las autoridades de sanidad . . . . Esta acción, sin embargo, no relevará de responsabilidad a cualquier dueño, agente o inquilino por infracción de las disposiciones de los reglamentos sanitarios . . . .

''Artículo 32.—Toda persona cuya propiedad haya sido injusta o ilegalmente destruida o dañada por obligar a la observancia de alguna orden, reglamento, ordenanza, o por acto alguno ejecutado por el Servicio de Sanidad, o por sus empleados o agentes, exentos de responsabilidad personal, podrá sostener la acción correspondiente contra el Gobierno de Puerto Rico para recobrar los daños y perjuicios consiguientes . . .''

■ José Pérez Barros, un administrador judicial, entabló una acción bajo la autoridad de la ley últimamente mencionada para resarcirse de los daños y perjuicios ocasionados por la destrucción por los funcionarios de la Sanidad de dos casas pertenecientes a la Sucesión de Jacinto Pérez Barros.

La corte inferior, después de celebrar un juicio sobre los méritos, llegó a la conclusión, entre otras cosas, de que la propiedad en cuestión era en realidad un estorbo público, y de que el administrador judicial había recibido un aviso razonable de ello.

Las dos casas daban a diferentes calles, y sólo estaban separadas por un tabique. Detrás, había un patio cubierto.

Una de estas casas había sido utilizada anteriormente como tienda, y la otra, como residencia. El patio probablemente formaba más bien parte de la residencia que de la tienda. La evidencia no es del todo clara en cuanto a este extremo. Ambas casas habían estado desocupadas por unos seis u ocho meses antes del acontecimiento que dió lugar a la presente contienda.

Hubo prueba tendente a demostrar que el patio estaba poco más o menos abierto al público, y que había sido usado en algunas ocasiones por muchachos y adultos indisciplinados como una letrina improvisada. No aparece con qué frecuencia y hasta qué límite se usaba el patio con tal fin. No hay indicación al efecto de que cualquiera de los vecinos fuera molestado alguna vez por las moscas, los olores ofensivos, o alguna otra cosa.

Algunas declaraciones también señalaron la presencia de ratas o la existencia de guaridas de ratas debajo del piso de concreto del comedor que daba al patio. De conformidad con los reglamentos sanitarios, un piso de concreto debe extenderse por lo menos doce pulgadas bajo la superficie de la tierra.

El funcionario de sanidad que dió cuenta del estorbo no recomendó la acción drástica adoptada por el Departamento de Sanidad. Este empleado admite sin vacilación que las condiciones que motivaron la queja pudieron haber sido corregidas fácilmente. La única dificultad en lo concerniente a poner el sitio a prueba de ratas—dice—era que hubiera habido que traer arena y cemento desde una distancia considerable. Aparte de esto—nos dice—todo lo que se necesitaba era un poco de trabajo de carpintería. No era necesaria prueba alguna para demostrar esto. Cualquier persona que fuera provista de un martillo, de clavos y de algunas tablas, pudo haber clausurado la entrada dentro de pocas horas a lo sumo.

El administrador judicial admite que se le había dicho que no arrendara la casa que había sido utilizada para tienda

hasta tanto se pusiera a prueba de ratas. La única notificación formal hechale fué un requerimiento perentorio en el sentido de que debía destruir las dos casas dentro de cinco días. En respuesta a esto, él ofreció efectuar todas las reparaciones que fueran necesarias de acuerdo con los planos y condiciones que el Departamento de Sanidad prescribiera. Por lo menos, el administrador envió dos telegramas solicitando un término razonable para hacer tales reparaciones. No hubo respuesta a ninguno de estos telegramas. Pero, al expirar los cinco días, cuatro hombres, bajo la dirección del oficial de sanidad local, empezaron a destruir las dos casas.

Hubo prueba tendente a demostrar que el oficial de sanidad local había hablado de tiempo en tiempo con el administrador judicial, respecto a las condiciones de la propiedad, y que el administrador otras tantas veces le había manifestado que la sucesión no tenía fondos, y que había sugerido que se avisara a los dueños en España. No se pretende alegar que se le notificara en ocasión alguna al administrador judicial, bien verbalmente o en alguna otra forma, que a menos que se corrigieran las condiciones sanitarias del local dentro de un término razonable, o dentro de un tiempo determinado que no fuera el plazo de cinco días que ya hemos aludido, se demolerían las casas. El oficial sanitario que dió cuenta de la situación a la oficina principal, manifestó francamente, al ocupar la silla de los testigos, que se le hubiera dado tal aviso y oportunidad a cualquier otro propietario o agente delincuente que no fuera José Pérez Barros.

Bajo las circunstancias, se infiere como lógica secuela que, en caso de que alguna otra persona hubiese delinquido, al dejar tal dueño o agente de actuar, el Departamento de Sanidad se hubiese conformado con clausurar la entrada al patio cubierto, y con cargar los gastos originados a la cuenta de la sucesión. Pero, sea ello como fuere, la mera exasperación de parte del oficial de sanidad local, aun cuando su paciencia fuera puesta a prueba lastimosamente, no puede

excusar ni el hecho de que se dejara de darle propio aviso en la forma exigida por la ley, ni el que se ocasionara más daño que el razonablemente necesario para abatir el estorbo en cuestión.

■■ Nada hay en este caso sobre que basar una conclusión racional de que era necesaria la destrucción de las dos casas, o de cualquiera de ellas, para abatir el estorbo. El oficial de sanidad en cuyo informe se fundó la actitud asumida por el Departamento, admite libremente, como hemos indicado antes, que el estorbo pudo haber sido abatido rápidamente a un costo ínfimo de parte del administrador judicial. El oficial de sanidad fué el testigo principal del demandado, y su declaración sobre este extremo no ha sido contradicha por la de ninguno de los otros testigos. Lo que el administrador judicial pudo haber hecho tan fácilmente, también pudo haberlo hecho, y debió hacerlo, el Departamento de Sanidad.

Desde luego que no queremos significar con esto que incumbía al departamento reparar la propiedad o poner a prueba de ratas el piso del comedor, si podía evitarse la necesidad de ponerlo a prueba de ratas demoliendo y removiendo el concreto o valiéndose de algún medio más sencillo. Sin embargo, muy poco hincapié se hace acerca de las guaridas de ratas, y el elemento de tiempo no fué un factor importante en este aspecto de la situación, según lo indica la falta de un límite de tiempo en la condición impuesta originalmente, a saber, que la casa debía ponerse a prueba de ratas antes de poderse volver a usar como tienda. De todos modos, lo cierto es que "el poder para abatir cualquier estorbo debe ser ejercido estrictamente con arreglo al estatuto," y que el ejercicio de ese poder no puede estar justificado cuando "la medida adoptada rebasa el límite de lo necesario para remover la condición ofensiva." 29 C. J. pág. 268, párrafo 83.

Esto debe ser así especialmente cuando, como en esta jurisdicción, cualquier gasto necesario en que incurran las

autoridades sanitarias se hace un gravamen sobre la propiedad, y el dueño o agente es criminalmente responsable, después de dársele un aviso adecuado, si voluntariamente deja de abatir un estorbo dentro de un tiempo razonable; y cuando, como en el presente caso, la propiedad en cuestión pertenece a los herederos ausentes de un dueño fallecido, y vale muchas veces más que cualquier gasto de esa naturaleza.

En este caso jamás se le dió un aviso adecuado al administrador judicial. No se le concedió oportunidad alguna para abatir el estorbo en cualquiera otra forma que no fuera la destrucción completa, inmediata, y enteramente innecesaria de las dos casas, o por lo menos, no se le ofreció tal oportunidad como una alternativa para efectuar la demolición por las autoridades sanitarias. Que el medio de que echó mano el departamento rebasaba en gran escala el límite de lo que era necesario para abatir el estorbo, no sólo es evidente, si que también ha sido abiertamente admitido por el testigo principal del demandado, cuya declaración sobre este extremo no ha sido contradicha por la de ninguno de los otros testigos, según ya hemos indicado.

La prueba del demandante indica que las dos casas pudieron repararse y pintarse a un costo máximo de quinientos o seiscientos dólares, antes de ser desmanteladas por el Departamento de Sanidad, y que la mayor parte de este cálculo sería destinada a la pintura. El trabajo de carpintería envuelto no hubiera ascendido a más de ciento cincuenta dólares. Esa prueba, que permanece incontrovertida, deja poco lugar a dudas de que, al tiempo del juicio, la restauración de las casas hubiese costado no menos de ochocientos a mil dólares.

En la súplica de la demanda se pedía la cantidad de mil quinientos dólares, con interés al tipo legal desde la fecha de radicación, más las costas y honorarios de abogado.

*Debe revocarse la sentencia recurrida,* y en su lugar, este tribunal dictará sentencia a favor del demandante por la

suma de ochocientos dólares, con interés al tipo legal desde el 5 de septiembre de 1924, sin especial condena de costas.

El Juez Asociado Sr. Texidor no intervino.